IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERN E. MCGINNIS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 24-73E |
| | ) | |
| v. | ) | District Judge Susan Paradise Baxter |
| | ) | Magistrate Judge Maureen P. Kelly |
| NURSE KATE HILL; | ) | |
| CHCA JANA JORDAN, *Correctional* | ) | Re: ECF No. 55 and 60 |
| *Healthcare Administrator*; | ) | |
| SUPERINTENDENT R. IRWIN, | ) | |
| *Superintendent of SCI Forest*; | ) | |
| HEALTHCARE PROVIDER WELL PATH, | ) | |
| *Health Care Provider*; and PENNSYLVANIA | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

Presently before the Court are the Motion to Dismiss filed on behalf of Defendant Healthcare Provider Wellpath ("Wellpath"), ECF No. 55, and the Motion to Dismiss Plaintiff's Second Amended Complaint filed on behalf of Defendants Corrections Health Care Administrator ("CHCA") Jana Jordan, Superintendent R. Irwin, Nurse Kate Hill, and the Pennsylvania Department of Corrections (collectively, the "DOC Defendants"), ECF No. 60.

For the following reasons, it is respectfully recommended that the Motion to Dismiss filed on behalf of Wellpath be denied without prejudice to be refiled if any claims survive bankruptcy proceedings. It is further recommended that the Court grant in part and deny in part the Motion to Dismiss on behalf of the DOC Defendants.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Vern E. McGinnis, Jr. ("McGinnis") is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). He brings this action *pro se* and with leave to proceed *in forma pauperis*. ECF Nos. 4, 52. Through his Second Amended Complaint, McGinnis alleges that on November 4, 2022, he sustained a left bicep tear during a work assignment at the State Correctional Institution – Forest ("SCI – Forest"). ECF No. 52 ¶ 10. Defendant Nurse Kate Hill ("Nurse Hill") examined his arm, checked a tendon, but failed to check his bicep, instructed McGinnis to avoid lifting weights for one month, and provided several packets of ibuprofen. Id. McGinnis returned to the medical unit two days later for continued pain and swelling, but Nurse Hill refused to examine his bicep. Id. ¶¶ 12-13.

Nearly one year later, on October 15, 2023, McGinnis submitted a sick call request for an MRI to confirm a torn bicep and asked to be seen by a specialist. A prison physician confirmed that his bicep was torn but informed McGinnis that he could not receive an MRI and would have to be seen by a physical therapist. Id. ¶ 14. On November 29, 2023, a physical therapist examined McGinnis, confirmed that his bicep was torn, and instructed him to submit a request to be seen by an orthopedic specialist. Id. ¶ 16. McGinnis's request for an orthopedic consultation was granted on December 5, 2023, and he was removed from his prison job pending the consultation. McGinnis filed a request to be returned to light duty work, which the prison physician granted on December 11, 2023. The physician explained that the medical bar to employment was in place for "liability reasons," but McGinnis was allowed to return to light duty. Id. ¶ 17. On January 10, 2024, McGinnis was taken to a local hospital and was seen by physician assistant, who ordered an MRI.

Id. ¶ 18. He was seen by a physical therapist on January 29, 2024, and was released to lift weights. Id. ¶ 17.

On February 7, 2024, McGinnis submitted a sick call request to determine the status of the MRI. He was told that "there is a long list of MRIs to be done." Id. ¶ 19. On February 12, 2024, McGinnis submitted a grievance related to scheduling the MRI and asserted that his care was intentionally delayed. Id. Plaintiff alleges that CHCA Jordan responded to his grievance on March 7, 2024, and informed Plaintiff that his treatment "is being scheduled & completed." Id. Plaintiff presents a copy of the Initial Review Response prepared by CHCA Jordan with his Second Amended Complaint. ECF No. 52-3 at 4. The response reflects that CHCA Jordan spoke with Wellpath providers and learned that McGinnis was seen at Clarion Hospital for his bicep complaints, and that an MRI "is currently scheduled."

> Inmate McGinnis' grievance 1074244 is denied. After reviewing medical records and speaking with Wellpath providers, which includes the Medical Director, it is noted that Inmate McGinnis was seen in January 2024 by Clarion Hospital for issues with bicep/rotator cuff. Inmate McGinnis needs to be aware that even though treatment is recommended at an outside facility, the Medical Director at SCI FRS provides final direction about the next step in a treatment plan for inmates at SCI FRS. Inmate McGinnis did have an MRI consult placed and then was later approved. The MRI is currently scheduled. Inmate McGinnis does not get to dictate the place or time of when or where this MRI is obtained.

Id. On March 14, 2024, McGinnis appealed the response and was informed by the facility manager that the medical department at SCI – Forest "has no control over the wait time for medical procedures that require outside resources." ECF No. 52-3 at 7. In his Second Amended Complaint, McGinnis alleges he was told that MRI would occur in 3-4 months.[1] Id. ¶ 21.

---

[1] An MRI was conducted and completed on July 3, 2024. ECF No. 42. McGinnis states that an orthopedic surgeon examined him on October 2, 2024, and informed McGinnis that a repair could be performed, but he would lose 10-20% of left arm strength. ECF No. 72. After pre-operative testing in early February 2025, surgery was performed on February 26, 2025 at Dubois Hospital. ECF No. 82.

3

McGinnis commenced this action on March 7, 2024, seeking compensatory damages and injunctive relief in the form of an order requiring DOC to provide an MRI and surgery to repair his torn bicep. ECF Nos. 1 and 5. McGinnis filed an Amended Complaint in accordance with Federal Rule of Civil Procedure 15. ECF No. 21. Defendants responded with Motions to Dismiss, ECF Nos. 27 and 33, and McGinnis requested and was granted leave to file the operative Second Amended Complaint on July 31, 2024. ECF Nos. 50, 51.

In the Second Amended Complaint, McGinnis alleges that the treatment afforded on the day of the injury and the delays experienced by him to obtain appropriate care constitute deliberate indifference to a serious medical condition and "general negligence."[2] Thus, McGinnis brings a claim for the violation of his rights under the Eighth Amendment and a state law negligence claim against Nurse Hill and all DOC and Wellpath Defendants involved in his care. ECF No. 52 at 3 – 5, 6. He seeks compensatory and punitive damages, as well as a declaration that his rights have been violated. Id. ¶¶ 29-31. McGinnis alleges that he exhausted all available administrative remedies and with the Second Amended Complaint, he provides copies of grievances and responses beginning October 30, 2023, through May 2, 2024. The grievances relate to delays in scheduling medical treatment and address a co-pay McGinnis believes was improperly assessed in October 2023.

The DOC Defendants and Wellpath each filed a Motion to Dismiss. ECF Nos. 55 and 60. Wellpath asserts that McGinnis fails to allege facts sufficient to state any claim against it and contends that McGinnis failed to exhaust administrative remedies. ECF No. 56 at 3-4. The DOC Defendants argue that sovereign immunity bars McGinnis's claims against the DOC and the

---

[2] In his Second Amended Complaint, McGinnis characterizes the Defendants' conduct as negligence but in response to the pending Motions to Dismiss, he states, "I am **NOT** suing for medical malpractice / professional negligence. I have filed this civil action for deliberate indifference, serious medical need, inadequate medical care, intentional delay of medical treatment, and general negligence." ECF No. 68 ¶ 7.

4

individual defendants in their official capacity, and otherwise fails to allege facts sufficient to state an Eighth Amendment claim against Superintendent Irwin and CHCA Jordan. ECF No. 61. The DOC Defendants also seek dismissal of any retaliation claim and raise McGinnis's failure to exhaust administrative remedies as a bar to all claims.

McGinnis filed a response to the pending Motions to Dismiss. ECF No. 70. McGinnis also filed a declaration attesting to his receipt of a final disposition of his grievance related to the delays in obtaining an MRI. ECF No. 64. The attached Final Appeal Decision reflects that on August 6, 2024, the DOC Secretary's Office of Inmate Grievances & Appeals ("SOIGA") upheld in part McGinnis's grievance at Grievance Number 1074244. The Chief Grievance Officer concluded that "there was a significant delay in the completion of the ordered MRI. The original consult for an MRI was entered on 1/10/24 and the procedure was not completed until July 2024." Id. at 2. The grievance was denied as it related to "any compensation" for the delay. Id.

On November 16, 2024, counsel for Wellpath filed a Suggestion of Bankruptcy and Notice of Stay, reflecting that on November 11, 2024, Wellpath Holdings, Inc. petitioned for relief under Chapter 11 of the United States Bankruptcy Code. ECF No. 74 (citing In re Wellpath Holdings, Inc., No. 24-90533 (Bankr. S.D. Tex.)). Under Section 362(a) of the Bankruptcy Code, the petition operates as a stay on a on all proceedings against the debtor and its related entities. 11 U.S.C. 362(a). On November 12, 2024, the Bankruptcy Court amended the automatic stay and extended the stay to all lawsuits and all non-debtor defendants on an interim basis. Id. (ECF No. 68). On November 18, 2024, this Court stayed this action in accordance with Section 362(a) and the stay order. ECF No. 76.

5

The automatic stay was lifted as to non-debtor defendants on May 7, 2025. In re Wellpath, No. 24-90533 (Bankr. S.D. Tex. May 1, 2025) (ECF No. 2599). The Court lifted the stay of this action as to all non-debtor defendants on May 19, 2025. ECF No. 85.

The Motion to Dismiss filed on behalf of the DOC Defendants is ripe for consideration.

**B.      STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct…," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing the plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'" Mergl v. Wallace, No. 2:21-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)). "However, the Court 'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" Mergl, 2022 WL 4591394, at *3 (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878–79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)).

Because McGinnis is proceeding *pro se*, his filings are construed liberally. Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (citing Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013)). "This means [the Court] remain[s] flexible, especially 'when dealing with imprisoned *pro se* litigants'" like McGinnis. Id. "Yet '*pro se* litigants still must allege sufficient

6

facts in their complaints to support a claim. And "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." Id. (internal citation omitted).

### C. DISCUSSION

#### 1. DOC and Official Capacity Claims – Sovereign Immunity

The DOC Defendants move to dismiss McGinnis's claims against the DOC and against the individual defendants in their official capacity based on the immunity afforded by the Eleventh Amendment. McGinnis responds that the United States Supreme Court held that sovereign immunity does not bar a plaintiff's "Title II ADA claims for money damages." ECF No. 70 at 2 (citing United States v. Georgia, 561 U.S. 151 (2006)). Thus, McGinnis argues his claims are not barred.

The Eleventh Amendment to the United States Constitution proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. Kentucky v. Graham, 473 U.S. 159, 165-67 (1985); Pennhurst State Sch. & Hospital v. Halderman, 465 U.S. 89 (1984). The DOC is an agency of the Commonwealth of Pennsylvania and, as such, the DOC and its employees are entitled to Eleventh Amendment immunity unless an exception to such immunity applies. See Lavia v. Pa. Dep't of Corr., State Corr. Inst. at Greene, 224 F.3d 190, 195 (3d Cir. 2000) (recognizing that the Pennsylvania Department of Corrections "shares in the Commonwealth's Eleventh Amendment immunity"); Kokinda v. Pennsylvania Dep't of Corr., 779 F. App'x 944, 948 (3d Cir. 2019) (district court properly dismissed plaintiff's section 1983, 1985(e), and 1986 claims against the Department of Corrections and individual prison staff sued in their official capacities as barred by the Eleventh Amendment) (citing Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002)).

Eleventh Amendment sovereign immunity is subject to three basic exceptions:

7

> (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under Ex parte Young, 209 U.S. 123 (1908), a state official may be sued in his or her official capacity for prospective injunctive relief.

Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002); Hindes v. FDIC, 137 F.3d 148, 165-66 (3d Cir. 1998).

As for the first exception, it is well-settled that Congress did not intend to abrogate the states' sovereign immunity by enacting Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). And, Pennsylvania has withheld its consent to such suits. Section 8521 of Title 42 of the Pennsylvania Consolidated Statutes states, "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment of the Constitution of the United States." 42 Pa. C.S.A. § 8521(6); see also Lombardo v. Pennsylvania, 540 F.3d 190, 196 n.3 (3d Cir. 2008); Pa. Const. Art. I, § 11; 1 Pa. Cons. Stat. Ann. § 2310; Lavia, 224 F.3d at 195 (3d Cir. 2000).

McGinnis's reliance on United States v. Georgia, *supra*, does not change this result to preserve his federal claims. There, the United States Supreme Court recognized Congress's intention to abrogate state sovereign immunity for claims brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.* United States v. Georgia, 546 U.S. at 154. However, McGinnis does not state an ADA claim. See ECF No. 52. McGinnis concedes that he is not pursing a medical-professional liability claim. Thus, he does not state a claim within any statutory exception to sovereign immunity for his "general negligence" claim. See ECF No. 68 ¶¶ 7, 9; 42 Pa. Cons. Stat. Ann. § 8522(b).

Because no exception to Eleventh Amendment immunity applies here, all claims against the DOC and the individual DOC Defendants in their official capacities must be dismissed from this action. Further, McGinnis's negligence claim is barred. Accordingly, it is recommended that the Court dismiss McGinnis's official capacity and negligence claims against all DOC Defendants with prejudice.

### 2. Eighth Amendment Claims

#### a. Superintendent Irwin

To establish individual liability under section 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)." "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id. For a supervisor, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2017), *rev'd on other grounds*, Taylor v. Barkes, 575 U.S. 822 (2015). First, a supervisor may be held liable if he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 & n. 5 (3d Cir. 2010) (citing A.M. ex rel. J.M.K. Luzerne Cnty., 372 F.3d 572, 586 (3d Cir. 2004)). Second, a supervisor may be liable if he "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M., 372 F.3d at 586.

Here, McGinnis references Superintendent Irwin only in the introductory section where he identifies the parties. ECF No. 52 ¶¶ 4, 7. Therefore, the DOC Defendants seek dismissal of all

9

claims against Superintendent Irwin for failure to state a claim. ECF No. 61 at 9. In opposition to the Motion to Dismiss, McGinnis asserts that Superintendent Irwin "is responsible for his employees['] actions [and] inactions." ECF No. 70 at 2. McGinnis adds that he appealed three grievances "through the facility manager's office," but Superintendent Irwin "failed to act, intervene, or even respond to my grievance appeals within a timely manner as per required by DOC policy." Id.

Review of grievances or concurrence in an administrative appeal process cannot establish the personal involvement necessary for liability in a Section 1982 action. Simonton v. Tennis, 437 F. App'x 60, 62-63 (3d Cir. 2011) (citing Rode, 845 F.2d at 1207-08) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to later-filed grievances about his medical treatment, did not establish that the officials and administrators were involved in the underlying alleged unconstitutional conduct). McGinnis fails to allege any other facts connecting Superintendent Irwin to his claim. Thus, the Motion to Dismiss all claims against Superintendent Irwin should be granted for failure to state a claim.

### b. CHCA Jordan

McGinnis alleges that CHCA Jordan denied a grievance on November 6, 2023, related to a co-pay charge for a sick call visit for his bicep injury, and a denied a grievance on March 7, 2024 related to delays in scheduling an MRI. ECF No. 52 ¶¶ 20, 24. He asserts that through her review, CHCA Jordan "became personally involved by addressing [facts] relating to this complaint." Id. ¶ 24.

DOC Defendants move to dismiss McGinnis's claims against CHCA Jordan because responding to a grievance is not sufficient to establish a cognizable constitutional violation. ECF No. 61 at 10. In addition, DOC Defendants argue that McGinnis's allegations fail to establish that she interfered with or otherwise prevented medical treatment to infer a plausible Eighth Amendment claim for deliberate indifference to his medical needs.

The Court agrees that CHCA Jordan's grievance review does not provide the personal involvement required to establish a deprivation of a constitutional right. Rode, 845 F.2d at 1207-08. The facts alleged also fail to state a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

To establish a violation of his constitutional right to adequate medical care, McGinnis must allege facts that demonstrate: (1) he had a serious medical need, and (2) acts or omissions by prison officials that reflect deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists when a "failure to treat can be expected to lead to substantial and unnecessary suffering." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

"To state an Eighth Amendment claim of deliberate indifference against' a corrections healthcare administrator, [McGinnis] must show that she 'possessed actual knowledge or a reason to believe that prison doctors or their assistants [were] mistreating (or not treating) him.'" Trainor

11

v. Wellpath, et al., 2021 WL 3913970, at *10 (W.D. Pa. Sept. 1, 2021) (citing (internal citations omitted).

> If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)).

McGinnis does not allege that CHCA Jordan was aware of any residual issues related to the initial diagnosis of his bicep injury in November 2022. Instead, McGinnis alleges that after placing a sick call request on October 15, 2023, he was seen by a physician assistant on November 17, 2023, who immediately consulted with a physician and scheduled him to be treated with physical therapy. ECF No. 52 at 4. McGinnis was seen by the physical therapist on November 29, 2023, and the therapist informed him that he would need to be seen by an orthopedic specialist. Id. The outside consultation was approved on December 5, 2023, and McGinnis was transported to Clarion Hospital for the exam on January 10, 2024. The examining physician assistant placed an order for an MRI. McGinnis sent two requests to determine when the MRI would be scheduled and was told on or about February 9, 2024, that he would need to fill out paperwork to be transported to SCI-Benner for the MRI. He also learned that there was a long list of inmates waiting for MRI testing. Id. McGinnis alleges that on March 7, 2024, CHCA Jordan reviewed this history and denied McGinnis's grievance because the MRI was approved and scheduled. McGinnis provides Declarations that reflect that an initial MRI was conducted at Kane Hospital on July 3, 2024, and a second occurred MRI on August 2, 2024. ECF Nos. 53, 64.

Based on the conduct alleged, McGinnis fails to plead a claim for deliberate indifference by CHCA Jordan. McGinnis does not allege facts that would establish that CHCA Jordan was responsible for any scheduling delay or that she interfered with prescribed treatment. Moreover, McGinnis's allegations make clear that he was under the care of medical professionals who provided no basis for CHCA Jordan to believe that expedited scheduling and treatment was necessary for an injury that occurred a year before he scheduled sick call for follow-up care.

At best, McGinnis's allegations support his belief that his injury warranted faster treatment different from what he received. A prisoner's differences of opinion with medical personnel do not support an inference of deliberate indifference. Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) ("mere disagreement as to the proper medical treatment" is insufficient to support an Eighth Amendment claim). Thus, it is recommended that the Court grant the Motion to Dismiss McGinnis's Eighth Amendment claims against CHCA Jordan for failure to state a claim.

### 3. First Amendment - Retaliation

The DOC Defendants move to dismiss any retaliation claim that may be set forth in the Amended Complaint. ECF No. 61 at 11-14. In response, McGinnis states that he "did not file yet for a claim of retaliation, or even file a grievance for retaliation." ECF No. 70 at 1-2. McGinnis states that he "reserve[s] the right to file a claim of retaliation should I need to." Id. at 2. Because McGinnis concedes he has not presented nor exhausted administrative remedies related to a retaliation claim, it is recommended that the Motion to Dismiss be granted as to any First Amendment retaliation claim that may be inferred from his allegations. See Porter v. Nussle, 534 U.S. 516, 532 (2002) (the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), applies to all inmate suits about prison life, and requires administrative exhaustion of all claims).

### 4. Failure to Exhaust Administrative Remedies

The DOC Defendants also move to dismiss this action based on McGinnis's failure to exhaust available administrative remedies through the DOC inmate grievance process prior to filing suit. ECF No. 61 at 14-19. This argument relies in part on matters outside the pleadings. Therefore, the Court provided all parties notice that as to the issue of exhaustion only, it would convert the Motion to Dismiss into a motion for summary judgment in accordance with Rule 12(d) of the Federal Rules of Civil Procedure. ECF No. 58. McGinnis was granted leave to submit materials in opposition to the motion pursuant to Federal Rule of Civil Procedure 56. Id. Thus, the motion is ripe for consideration.

McGinnis filed a copy of the Final Appeal Decision issued by the DOC Secretary's Office of Inmate Grievance and Appeals ("SOIGA") on August 6, 2024. ECF No. 64. While the grievance process was completed after this action was filed, the decision reflects that McGinnis's previously unexhausted grievance was considered on the merits and upheld "in part" because "there was a significant delay in the completion of the ordered MRI." Id. Therefore, the grievance was resolved at the last of three steps to the DOC grievance process. Under these circumstances, dismissal of McGinnis's claims for failure to exhaust is improper. As the Third Circuit explained in Rinaldi v. United States, 904 F.3d 257 (3d Cir. 2018),

> …when an inmate's allegations "have been fully examined on the merits" and "at the highest level," they are, in fact, exhausted. 219 F.3d at 281. This holding also satisfies the "three interrelated objectives" of exhaustion: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Dissent at 277 (quoting Spruill, 372 F.3d at 230). That is, precisely because we recognize that control over the grievance process is appropriately vested in prison administrators and that such administrators are best positioned to ascertain the need for further development of the administrative record, we should not be second-guessing their decisions on the relative efficiencies of (a) rejecting a claim and requiring it to be re-initiated at the

14

> institution level, versus (b) opting to research it, to the extent needed, at the appellate level and addressing it on the merits. And when the prison chooses the latter course, as it did here, making clear with its merits decision what the inevitable result would be of a re-initiated claim, then treating the claim as exhausted does not increase "the burden on the federal courts." Spruill, 372 F.3d at 230. It simply avoids subjecting prisoners and prison administrators alike to a futile exercise and provides judicial review of the prison's final decision on the merits. In short, where the prison has chosen to forgo a rejection on procedural grounds and has elected to research, analyze, and deny a claim on the merits, both the purposes of exhaustion—and exhaustion itself—are satisfied.

Id., 904 F.3d at 271–72. Accordingly, it is recommended that the Court deny the Motion to Dismiss based on failure to exhaust.

### 5. Leave to Amend

A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002). "In civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007).

Here, leave to amend would be both futile and inequitable. The pending Motion to Dismiss addresses McGinnis's Second Amended Complaint which was filed to resolve pleading deficiencies identified in the DOC's Motion to Dismiss McGinnis's Amended Complaint. See ECF Nos. 21, 33, 34. The Second Amended Complaint provides no additional factual detail to support his Eighth Amendment against Defendants CHCA Jordan or Superintendent R. Irwin. Therefore, granting further leave to amend these claims would be inequitable. Sovereign immunity also bars McGinnis's claims against the DOC and the individual Defendants in their official

15

capacity, as well as his negligence claims against any Defendant. Thus, leave to amend these claims would be futile and should not be granted.[3]

## D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Court grant the DOC Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 60, as to all claims against the Pennsylvania Department of Corrections, all official capacity claims against all DOC Defendants, all negligence claims against all DOC Defendants, and all Eighth Amendment claims against CHCA Jana Jordan and Superintendent R. Irwin. It is further recommended that the Court dismiss these claims with prejudice. Finally, it is recommended that the Court deny the Motion to Dismiss based on McGinnis's failure to exhaust administrative remedies.

It is further recommended that as to Wellpath's Motion to Dismiss, ECF No. 55, the Court deny the motion without prejudice to be refiled should any claim(s) survive the bankruptcy proceedings.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections within fourteen days, or seventeen days for unregistered ECF Users. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file

---

[3] The DOC Defendants do not seek dismissal of the McGinnis's Eighth Amendment claim against Nurse Hill. As a result, that claim proceeds.

objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may respond to the objections within 14 days in accordance with Local Civil Rule 72.D.2.

Dated: May 19, 2025　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　**<u>/s/ *Maureen P. Kelly*</u>**
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE


cc:　　The Honorable Susan Paradise Baxter
　　　　United States District Judge

　　　　All counsel of record by Notice of Electronic Filing

　　　　Vern E. McGinnis, Jr.
　　　　DG-2841
　　　　SCI Forest
　　　　P.O. Box 945
　　　　286 Woodland Drive
　　　　Marienville, PA 16239